UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Gregory Maggi

     v.

Grafton County Department of
Corrections, et al.

Civil No. 18-cv-059-LM
Opinion No. 2022 DNH 118 P

# O R D E R

In this action, plaintiff Gregory Maggi brings suit, under 42 U.S.C. § 1983, against defendants: the Grafton County Department of Corrections ("GCDC"), the Grafton County Commissioners, GCDC Superintendent Thomas Elliott, former GCDC Superintendent Glen Libby, and GCDC Captain Chris Kendall.[1]  Maggi alleges that these defendants, acting individually and in conspiracy with one another, violated his rights under the United States Constitution and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and engaged in tortious conduct under state law while he was incarcerated at the GCDC in 2013 and 2014.

Before the Court is defendants' motion for summary judgment.  (Doc. no. 63).  Maggi objects.

---

[1] Maggi's complaint also included, as defendants, "unnamed guards and unnamed medical personnel [who] have been employed at [GCDC]."  Compl. 2.  The unnamed defendants have not been identified or served in this action.

## Background

On February 19, 2013, Maggi was arrested on state criminal charges and detained at the GCDC, where he remained pending trial on those charges.  Doc. no. 69-2 at 1.  On December 22, 2014, Maggi was sentenced in state court and transferred the same day to the New Hampshire State Prison ("NHSP").  Id.

Maggi claims in this case that while he was detained at the GCDC defendants violated his rights guaranteed by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and his rights under the ADA, by: conducting improper and excessively forceful strip searches of him (Claims 1-4, 11-13[2]); allowing schoolchildren touring the GCDC to see him on the toilet (Claim 5); verbally harassing him (Claim 6); denying him adequate medical and mental health care (Claims 7, 9); denying him adequate nutrition (Claim 8); denying him access to his medical records (Claim 10); subjecting him to bright lighting twenty-four hours a day (Claim 13); placing him in a "rubber room" without adequate clothing or blankets (Claims 14, 15); denying him meaningful access to the courts by interfering with his access to and improperly examining his legal materials (Claims 16, 19, 21), interfering with his access to his attorneys (Claim 17), interfering with his access to and improperly examining his discovery materials (Claim 18), denying him free photocopies of legal materials or the ability to earn money to pay for photocopies (Claim 20), failing to treat his learning disabilities (Claim 21), denying him access to

---

[2] Maggi's claims are numbered here to coincide with the numbers he assigned them in his complaint.  See Doc. no. 1.

an adequate law library (Claim 22), interfering with his legal mail (Claim 24), and interfering with his ability to make phone calls related to his legal issues (Claim 26); denying him access to the GCDC's administrative grievance process (Claims 23, 25); and conspiring with one another to violate his federal constitutional rights (Claim 28).   Maggi also asserts that defendants are liable to him under state law for intentional infliction of emotional distress (Claim 27).   Maggi alleges that all of the incidents which form the basis for the claims in this action took place at the GCDC while he was incarcerated there between February 19, 2013 and December 22, 2014.

Defendants filed the instant summary judgment motion asking the Court to issue judgment in their favor on all of Maggi's claims, on the basis that Maggi filed the complaint in this case after the expiration of the applicable statute of limitations. In opposition to summary judgment, Maggi asserts that the court should apply the "discovery rule," and that the doctrines of fraudulent concealment and equitable tolling, render his complaint timely filed.

## Discussion

I.   <u>Summary Judgment Standard</u>

"Summary judgment should be granted when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 533 (1st Cir. 2022); <u>see also</u> Fed. R. Civ. P. 56.  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial by a rational fact-finder, and "material" if it could sway the

3

outcome under applicable law.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  The party seeking summary judgment bears the initial burden of showing that, with regard to the facts relevant to the issue before the court and set forth in the summary judgment record, there is no genuine and material factual dispute.  See Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 27 (1st Cir. 2019).  To "determin[e] if a genuine dispute of material fact exists," the court "'look[s] to all of the record materials on file, including the pleadings, depositions, and affidavits' without evaluating 'the credibility of the witnesses or weighing the evidence.'"  Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (citations and alterations omitted).

> Where, as here, a defendant moves for summary judgment on the basis of an affirmative defense -- like the statute of limitations -- the defendant bears the burden of proof and cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.  If the defendant produces such conclusive evidence, the burden shifts to the plaintiff to establish that the statute of limitations does not apply.

Ouellette v. Beaupre, 977 F.3d 127, 135 (1st Cir. 2020) (internal quotation mark and citations omitted).  "If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted." N.H. Ball Bearings, Inc. v. GeoSierra Envtl, Inc., No. 20-cv-258-PB, 2021 U.S. Dist. LEXIS 162458, at *10, 2021 WL 3847494, at *3 (D.N.H. Aug. 27, 2021).  "The non-movant cannot merely rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir.

2020) (internal quotation marks omitted).  "At the summary judgment stage, the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue."  Perez v. Lorraine Enters., Inc., 769 F.3d 23, 30 (1st Cir. 2014).

In considering the evidence presented by either party, "[t]he court must examine the record in the light most favorable to the nonmovant and must make all reasonable inferences in that party's favor."  Viscito v. Nat'l Planning Corp., 34 F.4th 78, 83 (1st Cir. 2022) (internal quotation marks omitted).  However, in opposing summary judgment, the nonmovant "is not permitted to rely on conclusory allegations, improbable inferences, and unsupported speculation."  Guldseth, 45 F.4th at 533 (internal quotation marks omitted); see also Harriman v. Hancock Cnty., 627 F.3d 22, 34 (1st Cir. 2010) (noting that "'tenuous assertions strung together by strands of speculation and surmise' cannot defeat summary judgment" (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 583 (1st Cir. 1994))).

II.   Statute of Limitations

Neither § 1983 nor the ADA specifies the applicable limitations period for private claims.  As a general rule, claims arising under § 1983 borrow the statute of limitations applicable to personal injury claims in the state in which the events underlying the claims occurred.  See Fincher v. Town of Brookline, 26 F.4th 479, 485–86 (1st Cir. 2022).  Similarly, Title II ADA claims, such as those pleaded by  Maggi,

are also subject to the state's limitations period for personal injury claims.[3]  See Sullivan v. Chester Water Auth., No. 2:22-cv-00147-JDL, 2022 U.S. Dist. LEXIS 130080, at *30, 2022 WL 2901068, at *12 (D. Me. July 22, 2022) (citing Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 118 (1st Cir. 2003)), R&R approved, 2022 U.S. Dist. LEXIS 156781, at *2, 2022 WL 3912549, at *1 (D. Me. Aug. 31, 2022).  In New Hampshire, such claims are subject to a three-year limitations period.  See McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011) (citing RSA 508:4, I). When the court applies the limitations period dictated by state law, the court also borrows the state's rules for tolling the limitations period. See Ouellette, 977 F.3d at 135.

III.    Analysis

    A.    Suit Filed After Expiration of Limitations Period

The parties here agree that Maggi was incarcerated at the GCDC between February 19, 2013 and December 22, 2014, and that all of the events underlying each claim in this action occurred during that time period.  Further, it is undisputed that Maggi knew, at the time those events occurred, both that the event had occurred and that the event had caused the injuries of which Maggi complains.  Accordingly, the statute of limitations accrued as to each of Maggi's claims on the date the event, incident, or circumstance which gave rise to each claim occurred.  Maggi has not

---

[3] Certain types of ADA discrimination claims, not at issue here, are subject to a four-year statute of limitations under 28 U.S.C. § 1658.  See, e.g., Mercado v. Puerto Rico, 814 F.3d 581, 591 (1st Cir. 2016).

provided the specific dates on which any of the incidents relevant to the claims in this case occurred.  However, the undisputed facts in this case show that Maggi entered the GCDC on February 19, 2013, the limitations period for his claims may have accrued as early as that date, and expired on February 19, 2016.  Maggi left the GCDC on December 22, 2014.  Thus, unless it is tolled, the limitations period for all of Maggi's claims accrued by December 22, 2014, and expired no later than December 22, 2017.

Maggi does not dispute that the complaint in this case was filed on January 19, 2018, almost a month after the latest date upon which the limitations period could have expired.  Accordingly, defendants have met their burden to show that Maggi filed this action after the expiration of the applicable three-year limitations period.  Maggi, therefore, must demonstrate, through evidence in the summary judgment record, that one or more tolling doctrine applies in this matter to render the filing of this case timely.

B.    Discovery Rule

Maggi argues that the court should apply the discovery rule to render his federal and state claims timely.  He maintains that he was denied access while at the GCDC and the NHSP to sufficient legal resources to determine, in time to file this matter within the statute of limitations, whether and how the allegedly wrongful conduct of the defendants was actionable.  Maggi asks the Court to find that the statute of limitations applicable to this case began to run on February 15,

2015, the date he was first given access to the NHSP law library where, he states, he was able to access sufficient legal resources to prepare this lawsuit.  Maggi asserts that the limitations period, therefore, expired on February 15, 2018, after the complaint in this case was filed, rendering it timely.

With respect to the federal claims, "federal law controls when the cause of action accrues." Fincher, 26 F.4th at 486.  Ordinarily, § 1983 claims, and ADA claims, first accrue "when a plaintiff knows or has reason to know of his injury," and the "injury's likely causal connection with the putative defendant." Ouellette, 977 F.3d at 136 (§ 1983 claims); see also Stropkay v. Garden City Union Free Sch. Dist., 593 F. App'x 37, 41 (2d Cir. 2014); Frame v. City of Arlington, 657 F.3d 215, 240 (5th Cir. 2011) (Title II ADA claims).

With respect to the state claim for intentional infliction of emotional distress, New Hampshire law provides a similar rule for determining when a tort claim accrues:

> [W]hen the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I.  That exception, known as the "discovery rule," delays the accrual of the limitations period to the date a reasonably diligent plaintiff discovered or should have discovered his injury.  See Balzotti Glob. Grp., LLC v. Shepherds Hill Proponents, LLC, 173 N.H. 314, 320-21 (2020).

> According to RSA 508:4, I, the three-year limitations period does not begin to run until two prongs are satisfied: first, a plaintiff must know or reasonably should have known that it has been injured; and second, a plaintiff must know or reasonably should have known that its injury was proximately caused by conduct of the defendant. To obtain the benefit of the discovery rule and overcome the defendant's statute of limitations defense, the plaintiff must prove that at least one prong was not yet satisfied at a time within three years of the plaintiff's commencement of the action. Thus, the discovery rule does not apply unless the plaintiff proves that the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the defendant's alleged wrongful act or omission.

Id. at 321 (internal citations omitted). "[T]hat the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable." Id.

Significantly, "[t]he statute of limitations does not accrue when a plaintiff first comes upon the legal theory presented, but from the date the injury occurred, assuming that 'the alleged harm was not inherently unknowable at the moment of [its] occurrence.'" Valerio v. Wrenn, No. 15-cv-248-LM, 2017 U.S. Dist. LEXIS 196999, at *15 n.3, 2017 WL 5956668, at *6 n.3 (D.N.H. Oct. 23, 2017) (some internal quotations marks omitted, quoting Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 44 (1st Cir. 2017)), R&R adopted, 2017 U.S. Dist. LEXIS 196999, at *1, 2017 WL 5905514, at *1 (D.N.H. Nov. 29, 2017); see also Sullyville, LLC v. Town of Carroll, No. 2019-0240, 2021 N.H. LEXIS 60, at *22, 2021 WL 1310832, at *7 (N.H. Apr. 8, 2021).

Here, even if the court were to assume the truth of Maggi's assertions about his lack of access to legal resources, that would not save his claims. His claims accrued on the date he should have reasonably known he was injured, not on the

9

date he first learned he had a legal cause of action.  Nothing in the summary judgment record suggests that the injuries at issue in this case were inherently unknowable.  Further, it is undisputed that Maggi knew, at the time each of the relevant events occurred, both that the event had occurred, and that the defendants involved in those events caused the injuries of which he complains.[4] Accordingly, neither the federal discovery rule, nor the New Hampshire discovery rule, saves any of Maggi's claims from the statute of limitations.

C.   <u>Tolling of the Limitations Period</u>

1.   <u>Fraudulent Concealment</u>

"The fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence."  Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 714 (2010) (internal quotation marks and brackets omitted)).  The burden is on the plaintiff invoking the fraudulent concealment doctrine to "present some evidence of an affirmative act on the part of the defendant to conceal or cover up the underlying wrongful conduct that gave rise to the plaintiff's asserted injury."  Galvin v. Metrocities Mortg., LLC, No.

---

[4] In Maggi's response to the Court's June 15, 2018 Order (Doc. No. 3) directing him to show cause why his complaint should not be dismissed as untimely, he stated that "[w]hile Mr. Maggi recognized that his rights were impaired during his time at [GCDC], he was not aware of relief that could be granted at the Federal level until he had access to federal case law and statutes."  Doc. no. 5 at 1.

16-cv-268-JL, 2017 U.S. Dist. LEXIS 199204, at *36, 2017 WL 5632868, at *10 (D.N.H. Nov. 17, 2017).

Here, Maggi bases his fraudulent concealment bid on the same facts that he claims warranted relief under the discovery rule.  He asks the court to apply the fraudulent concealment doctrine to toll the limitations period applicable to this case because, he asserts, that the "[d]efendants repeatedly denied [him] access to legal resources, including federal case law, United States Code, and civil litigation information," and therefore they "should not profit from their bad acts which amount to fraudulent concealment."  Doc. no. 68-1 at 8-9.

That contention does not provide grounds for this court to find a genuine issue of material fact regarding the applicability of the fraudulent concealment doctrine.  Maggi has not produced any submission of evidentiary quality to demonstrate that the GCDC defendants took any action to conceal his injuries, or to cover up their own conduct in causing the injuries; indeed, it is undisputed that he knew of those matters at the time the events occurred.  Maggi, therefore, has not demonstrated that defendants' summary judgment motion should be denied on the basis of any triable issue of fraudulent concealment.[5]

---

[5] Maggi baldly asserts that the Court should apply the fraudulent concealment doctrine here because the GCDC defendants were "working in concert" with unnamed state actors at the NHSP "to deny Mr. Maggi his ability to bring a case as a pro se defendant by thwarting his attempts at a timely filing."  Doc. no. 69-1 at 9. Assuming, without deciding, that Maggi could ground his fraudulent concealment argument on the actions of third parties, he has not demonstrated entitlement to relief on that basis, as his assertions of a conspiracy are conclusory.  There is no evidence in the summary judgment record suggesting that NHSP employees

2.   Equitable Tolling

a.   Standard

"Like the discovery rule and the doctrine of fraudulent concealment, equitable tolling 'allows a plaintiff to initiate an action beyond the statute of limitations deadline ...[where] the claimant was prevented in some extraordinary way from exercising his or her rights.'" Begley v. Windsor Surry Co., No. 17-cv-317-LM, 2018 U.S. Dist. LEXIS 44062, at *20, 2018 WL 1401796, at *7 (D.N.H. Mar. 19, 2018) (quoting Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 624(2005)). "[E]quitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit." Portsmouth Country Club, 152 N.H. at 624.  "It 'applies principally if the plaintiff is actively misled by the defendant about the cause of action.'" Id. at 623 (quoting 51 Am.Jur.2d Limitation of Actions, § 174 (2000)).

b.   Information Essential to Bringing Federal Claims

To file an action under federal law in this court, a prisoner needs to file a written complaint that sets forth the essential nature of the claim and its core facts. See Briand v. Town of Conway, 561 F. Supp. 3d 188, 194 (D.N.H. 2021) (citation omitted); see also Fed. R. Civ. P. 8(a) (to state a claim for relief a pleading must

---

misrepresented or concealed any facts that Maggi needed to bring this action, or that NHSP employees conspired or coordinated with the GCDC defendants with regard to Maggi's law library access while at the NHSP or the GCDC.

contain "a short and plain statement of the claim showing that the pleader is entitled

to relief."). "[T]he failure to cite the proper statute is not fatal to the claim at the

pleading stage." Jones v. Hanna, No. 14-2346, 2016 U.S. App. LEXIS, at *4, 2016 WL

11781884, at *1 (1st Cir. 2016) (citation omitted); see also Johnson v. City of Shelby,.

574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted.").

Plaintiffs are not even required to expressly invoke § 1983 in order to file suit under

that provision. See Johnson, 574 U.S. at 11.

Moreover, "a pro se complaint, however inartfully pleaded must be held to less

stringent standard than formal pleadings drafted by lawyers." Simmons v. United

States, 132 S. Ct. 23, 25 (2021) (internal quotation marks and citation omitted); see

also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se filings must be "'liberally

construed.'" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).


### c.   Limits on Access to Legal Resources

Maggi argues that the statute of limitations in this case should be equitably

tolled because circumstances at the GCDC and the NHSP prevented him from timely

filing this suit. Specifically, Maggi asserts that: his access to a law library was

limited at both the GCDC and the NHSP; there were stretches of time at both

facilities in which he was not able to access the law library[6]; he sometimes had

---

[6] Maggi asserts that he was denied access to the GCDC law library for more
than six months when he first arrived at that facility. Maggi Aff. 2. He also alleges

limited access to writing implements other than a "rubber pencil" provided to him by GCDC officials, and no access to a computer or word processor at both facilities; the GCDC law library did not have federal caselaw, the United States Code, or information on civil procedure, and to obtain federal caselaw at the GCDC he had to file a written request for copies of specific cases which GCDC officers would print from the internet and provide to him when they had time[7]; and at both facilities officials interfered with his access to attorneys, certain documents, and legal mail.[8]

Maggi does not offer any submission of evidentiary quality suggesting that he had substantially no access to writing implements, or any other means of contacting

---

that, at the NHSP, "the totality of time" he did not have access to his materials and legal resources was 156 days.  Doc. no. 69-1 at 6.  Maggi has not specified the time period during which that 156-day period occurred.  Construing that assertion in Maggi's favor, the court will assume, without deciding, that he is referring to the period of time beginning on February 15, 2015, when he first visited the NHSP library, and ending on February 19, 2016, the earliest date on which the statute of limitations for Maggi's claims could have expired.

[7] Maggi states that when obtaining federal caselaw printed by GCDC officers, he "was never sure if this was the actual case law [he] was seeking and could not be sure [he] was receiving the entire case law."  Doc. no. 69-2 at 2.  Maggi has not pointed to any specific instance in which he was provided with incorrect or incomplete cases, or that his litigation efforts were hampered because he relied on cases provided to him by GCDC personnel.  Instead, Maggi appears to offer this information to support his assertion that "no rational person would think it possible or prudent to begin to draft a lawsuit against corrections officers who were actively overseeing his confinement and torture."  Doc. no. 69-1 at 3.  In addition to being conclusory, the argument is unavailing, as thousands of rational prisoners file lawsuits in federal court against their jailers every year.

[8] Maggi states that, in addition to the conditions listed here, he was subject to torture and sleep deprivation at the GCDC, but fails to provide specific dates of those incidents or to explain how those incidents actually impacted his ability to timely file this lawsuit.

the court in writing while at the GCDC.  Rather, Maggi argues that being denied

access to legal resources including the law library for periods of time at the GCDC

and the NHSP constituted an "extraordinary circumstance" warranting equitable

tolling of the limitations period applicable here.

> While, in unusual cases, certain limitations of imprisonment may rise to
> the level of "extraordinary circumstance" . . . the usual problems
> inherent in being incarcerated, such as a prisoner's lack of
> prior legal training or limited access to legal resources in a prison's
> library, do not, by themselves, justify equitable tolling.

Martinko v. N.H. State Prison for Men, No. 19-cv-221-SM, 2020 U.S. Dist. LEXIS

220098, at *22-23, 2020 WL 6875752, at *8 (D.N.H. Nov. 9, 2020) (some internal

quotations marks omitted), R&R adopted, 2020 U.S. Dist. LEXIS 218911, at *1, 2020

WL 6875103, at *1 (D.N.H. Nov. 23, 2020); see also Holmes v. Spencer, 685 F.3d 51,

62-63 (1st Cir. 2012) (equitable tolling not warranted because pro se prisoner's lack of

legal training and limited access to prison's scant selection of resources not

"extraordinary"); Baker v. Norris, 321 F.3d 769, 771–72 (8th Cir. 2003) (declining to

equitably toll limitations period based on prisoner's limited access to

library); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (equitable tolling did not

apply to extend filing deadline where the prisoner, acting pro se, proclaimed himself

to have been ignorant of the applicable law).

        All of the conditions regarding legal resources to which Maggi was subject at

the GCDC which he alleges hampered his ability to timely file this lawsuit are

circumstances that apply to virtually every incarcerated person.  He has not

demonstrated the existence of any genuine issue of material fact as to whether there

were "extraordinary circumstances" warranting the tolling of the limitations period in this case, based on his allegations that he was subject to restrictions on his access to certain legal resources.

It is undisputed that Maggi was aware of the alleged incidents underlying the claims in this case, and that defendants' conduct caused the injuries he claims here, before his transfer to the NHSP. To the extent Maggi required any further knowledge of the legal significance of defendants' alleged wrongful conduct, the undisputed record in this case demonstrates that he was aware as early as November 2014 that civil rights violations were actionable in federal court. As the record demonstrates that Maggi could have filed this lawsuit within three years of the dates upon which his claims accrued, the court finds that Maggi has failed to demonstrate that he is entitled to equitable tolling based on any conditions at the GCDC.

Even if a prisoner's lack of knowledge of the legal theories underlying his claims could justify a finding of exceptional circumstances and merit tolling of the limitations period, the evidence in the summary judgment record of this case demonstrates that such a finding would not be appropriate here. Defendants have filed exhibits with their summary judgment motion which demonstrate that Maggi was given significant access to legal resources at the GCDC. Specifically, the defendants have produced evidence which demonstrates that Maggi was given access to the GCDC law library approximately 230 times during his twenty-two month incarceration at that facility, ; was allowed to have "several bins and bankers' boxes" of legal and personal property, doc. no. 63-2 at 4; and was permitted to keep and

16

access numerous books concerning litigation, including books entitled: <u>Legal Research</u>, <u>Legal Writing</u>, <u>Federal Courts</u>, <u>Represent Yourself in Court</u>, <u>Represent Yourself</u>, <u>Black's Law Dictionary</u>, and <u>Constitutional Law.</u>  Maggi has not disputed those assertions.

Further, on November 20, 2014, Maggi received, apparently from this court, "the packet that is supposed to be available at prisons and jails that covers civil rights violations and how to remedy them in through (sic) the courts under 42 U.S.C. § 1983." <u>Id.</u> at 41.  Maggi has not disputed that he received that material.  That exchange alone demonstrates that Maggi was aware not only of the factual basis for his claims, but that he was aware that his claims were actionable in federal court in a § 1983 action.

The evidence in the record further demonstrates that Maggi had the ability to, and did, request federal caselaw which GCDC personnel retrieved and provided to him, <u>see, e.g.</u>, <u>id.</u> at 30-31, and that he received other federal caselaw from family members relevant to filing a § 1983 action in federal court.  On February 28, 2014, he received a copy of Lewis v. Casey, 518 U.S. 343 (1996), a Supreme Court case which concerns a lawsuit filed by state prisoners alleging deprivations of the prisoners' "right of access to the courts and counsel protected by the First, Sixth, and Fourteenth Amendments," <u>id.</u> at 346, and which states that civil rights actions alleging violations of "basic constitutional rights" arise under § 1983, <u>id.</u> at 354.  On March 19, 2014, GCDC personnel provided  Maggi a copy of Bounds v. Smith, 430 U.S. 817 (1977), which is also a Supreme Court case concerning a § 1983 action filed

17

by prisoners to vindicate constitutional rights.  See id. at 818.  Maggi does not dispute

that he received those cases while he was at the GCDC.

As noted above, it is undisputed that—before his transfer to NHSP—Maggi

was aware of the alleged incidents underlying the claims in this case, and that

defendants' conduct caused the injuries he claims here.  He was therefore in

possession of all the information he needed to provide a "short and plain" statement

of his claims, in satisfaction of Rule 8(a), before his transfer to the NHSP.  To the

extent Maggi required any further knowledge of the legal significance of defendants'

alleged wrongful conduct, the undisputed record in this case demonstrates that he

was aware, as early as November 2014, that civil rights violations were actionable in

federal court under 42 U.S.C. § 1983.  As the record demonstrates that Maggi could

have filed this lawsuit within three years of the dates upon which his claims accrued,

the court finds that Maggi has failed to demonstrate that he is entitled to equitable

tolling based on any conditions at the GCDC or the NHSP.[9]


d.   Mental Health

Maggi argues that his ability to timely file this suit was impaired as a result of

his mental health issues.  In support of this argument for equitable tolling, Maggi

offered his own sworn statements averring that: he has attention deficit disorder, and

---

[9]The Court declines to address Maggi's allegations that conditions at the NHSP
prevented him from timely filing this lawsuit, as his assertions concerning the
conditions at the NHSP are rendered irrelevant by the court's finding that he had the
information he needed to file this lawsuit before entering that facility.

that both the GCDC and the NHSP have refused to provide him with medication to mitigate that condition; and that he suffers from PTSD as a result of the events which form the basis for the claims in this case, and that as a result, he would experience flashbacks and anxiety attacks when he would work on this case at the NHSP, which made his preparation of this lawsuit difficult.

New Hampshire's limitations statute provides that "[a]n infant or mentally incompetent person may bring a personal action within 2 years after such disability is removed." RSA 508:8. Under that statute, "[t]he limitations period for the federal claims would be equitably tolled during mental incompetence." Sykes v. RBS Citizens, N.A., No. 13-cv-334-JD, 2015 U.S. Dist. LEXIS 157285, at * 8, 2015 DNH 213, 2015 WL 7429988, at *3 (D.N.H. Nov. 20, 2015). The plaintiff "bears the heavy burden of showing that he was mentally incompetent" within the meaning of that tolling provision." Id.

> The New Hampshire Supreme Court has not provided a standard of mental incompetence under RSA 508:8. . . . When the state's highest court has not addressed an issue, a federal court must make an informed prophecy as to how that court would rule if faced with the issue. In predicting the course of state law, a federal court should consider, among other things, analogous decisions of the state's highest court, other decisions in the state, and decisions on the issue in other jurisdictions . . . . The federal tolling standard was developed from state-law competency principles. The federal standard, which requires that the plaintiff be unable to engage in rational thought and deliberate decision making sufficient to pursue his claim alone or through counsel, focuses on the plaintiff's ability to comprehend and pursue his legal claims, which is like the New Hampshire law on the statute of limitations and the statutory interpretation in Massachusetts, Maine, and Vermont. The court will apply the federal tolling standard as a prediction of the standard the New Hampshire Supreme Court would follow. Therefore, the applicable standard for the state and federal claims is whether [the

plaintiff] was unable to engage in rational thought and deliberate
decision making sufficient to pursue his claims alone or through counsel.

Id., 2015 U.S. Dist. LEXIS 157285, at *8-12, 2015 WL 7429988, at *3–4, (internal

quotation marks and citations omitted).[10]

Maggi has not provided any medical evidence in support of his claim that his

mental health issues prevented him from working on his lawsuit, and has not argued

or otherwise provided evidence to support a finding that he was "unable to engage in

rational thought and deliberate decision making" in a manner that prevented him

from filing this suit until more than three years after he arrived at the NHSP.  In

fact, Maggi does not state that he was so disabled by his mental health issues that he

could not work on this lawsuit at all, only that those issues made his work on this

case difficult.

Maggi has not provided the Court with dates on which he attempted to work on

this lawsuit but was unable to do so due to his mental health issues.  Nor has he

produced any evidence or described what measures, if any, he took to alleviate his

mental health issues which might demonstrate that he was diligent in his efforts to

file this lawsuit. Accordingly, while Maggi's mental health issues may have made the

preparation of this lawsuit more difficult than it would otherwise have been, he has

failed to produce any evidence sufficient to meet his burden to demonstrate that there

was a genuine dispute of material fact as to whether his mental health issues

---

[10] It does not appear that the New Hampshire Supreme Court has—since the
date Sykes was decided—provided a standard of mental incompetence under RSA
508:8.

constituted a degree of mental incompetence amounting to extraordinary circumstances warranting equitable tolling of the limitations period in this case.

## Conclusion

The undisputed evidence before the court demonstrates that the claims in this action accrued at the time the events giving rise to them occurred, and that the three-year limitations period applicable to this matter expired, at the latest, on December 22, 2017, one month before this case was filed.  Maggi has failed to demonstrate the existence of a genuine issue of material fact as to the applicability of any rule or doctrine that could toll that three-year period.  Accordingly, this action, commenced on January 19, 2018, was not timely filed and defendants are entitled to judgment as a matter of law.

Defendants' motion for summary judgment (doc. no. 63) is granted.  The Clerk is directed to enter judgment and close this case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 27, 2022

cc:   Gregory Maggi, pro se
      Matthew Vernon Burrow, Esq.